Okay, next case on the packet is Peeble v. Kopecky 5-13-0097 Johnson, ready? I am, sir. May it please the court Bailey v. Kopecky Who is here Your honors, Tom Keith The third and second, Tom Keith You guys have gotten This morning, albeit We think two is enough Your honors Who has had this experience Who hasn't had this experience In this case And that experience is this Knock on the door You think somebody is there You think somebody is present Nobody answers After a couple of beats, knock again Nobody answers And so what you do Maybe even minus But what you do Is you reach And you try to knock Maybe you don't do that either But other than that, what you do is you reach And you try to knock That's what happened In this case Everybody's had that experience Everybody's died one way or another That's what happened here That's what the evidence shows Happens here That is the only reasonable inference that can be drawn From the evidence That Judge Kimmel heard In this case Because Judge Kimmel was a judge Judge Nalen ultimately Because Judge Kimmel retired But it was Judge Kimmel who made the ruling on The motion to suppress it It was Judge Kimmel who heard that testimony But that's what happened Here, your honors The uncontradicted testimony The only testimony I heard from Was my client, Stephen And the uncontradicted testimony This appears to be T-0037 Of the record, transcript Stephen testified Was there a twisting of the knob and a pushing? That's what the testimony was? There was not a twisting of the knob, your honor There was pushing, there was creaking in particular What Stephen testified to is that he heard a knock On the door  Thirty seconds That knocking though couldn't be the pressure to open the door Well, it could Except this is the key Your honor, the key is that The uncontradicted testimony Stephen says that there was a roll of Approximately thirty seconds And then he heard a creak without An accompanying knock That's what the key is That's what the difference is Now, the state may suggest And they have suggested In the lower level that that's where it was That the door opened At the time of the knock As you have testified during the preliminary hearing Whether or not that's going to be Part of the record Part of this court's consideration or not We think it should be, I'll get to that in a minute But that's what the key is, your honor The key is that There was no accompanying knock At the time that Stephen Heard the door creak open Okay, now, did the officers Allegedly They said they knocked And then the second time they said it They knocked and it came open? Yes. So there is testimony both ways Well, there is and there's not And that's one of the questions It's going to be the only witness That Judge Kimmel heard from During the motion to suppress With Stephen The motion to suppress, we suggest We argue it on the brief We think the record is abundantly clear We think the motion to suppress Is abundantly clear That Both a Fourth and a Fifth Amendment Argument were made We've got the burden The defense has the initial burden On, of course, the Fourth Amendment issue The state has the initial burden On the Fifth Amendment issue The state had those officers Present and prepared To testify That's in the joint stipulation of facts That's been made And is part of The record The Only witness That Judge Kimmel heard from Was Stephen The only issue that was litigated During the motion to suppress Was the Fourth Amendment Issue They never got to the Fifth Amendment issue It is suggested By the state That the reason they didn't get to it Is that that issue was somehow weighed That that issue was not properly Raised in the motion to suppress I don't think that's true I don't think that the motion to suppress Can be interpreted in that way I think there are six different places Six different places just within The motion to suppress The Fifth Amendment argument Was made. It's made in the introduction It's made in paragraph six Paragraph ten, paragraph eleven Paragraph thirteen And in the prayer for relief subparagraph C On the prayer for relief Six different times the Fifth Amendment argument Was made on top of the preliminary hearing When Agent Edwards did In fact testify There was a question that was Raised by, a question that was asked By Don Clements, Mr. Clements Who was the defense counsel at the trial court He asked about The Fifth Amendment issue And asked whether or not my client made A request at some point To talk with counsel that was objected To as being the unspoken Statement, but the statement Certainly had a notice of that from that Hearing, it was a notice of that from The transcript, and they had Three different officers who were there to testify There was a preliminary hearing Therefore, your honor, there was Testimony from Agent Edwards Where he suggested That they open the storm door See there's two doors He didn't have a storm door And then you've got to open the storm door In order to knock on The interior door You know, at some point I heard it I read that it was a screen door In some, and other places I heard it was a storm door I believe that it's a storm door And I was the counsel Below, I will suggest That implies to me that it's glass Or some kind of semi-solid Your honor, it is glass And that's what we believe the evidence is And we can infer that from The preliminary hearing testimony as well Because what Agent Edwards Does say, and this is where it's so Key about the search What Agent Edwards Testifies to during the preliminary Hearing is that he was not Able to detect The, any aroma of Or odor of marijuana Coming from the inside of the house Until it is that that door Had been opened And If there was As they want to suggest What Agent Edwards suggests In their preliminary hearing testimony Just as most of this institution questioned Was earlier, is that the door Wasn't closed all the way And that's why the door opened at the time that there was not Is that the door was not closed All the way, except That's the case, when the original Either, Justice Cheney, when he Originally opens, or approaches That door, if there is in fact a screen That's not open all the way He'd be able to smell through the door By contrast, if there is a screen On that door, and so He doesn't have an open air Access to the front door Until he opens the storm door Then at that point, Justice Brooks If the door had been opened Some way, which the state Wants to suggest, which would permit It to open at the time of knocking Agent Edwards would have testified that He could smell the odor of cannabis If he opened the storm door But he doesn't do that either In the preliminary hearing testimony He testifies that He did not smell the odor of marijuana Until after it was That he had knocked And then that door opened Yes, he suggests that it opened At the time that he knocked Stevens suggests, and the only testimony I heard of the motion to suppress Is that it didn't open Until that 32nd wall And then there was A freaky spot Here's the other thing about Agent Edwards And here's why it is we believe Certainly we believe that a minimum The case has to be set back To the preliminary hearing Because the uncontradicted evidence The motion to suppress, the only evidence The only evidence that Judge Kimmel heard from Was Stevens And Stevens' testimony Uncontradicted, uncontroverted testimony Is that the door was closed Is that there was that wall Of 32nd You talk about the intent of the police I think it's clear from that The state talks about A couple of points in their brief And suggests that there's no evidence presented on how it is That the door opens Because the state wants to somehow confine us To the four corners of that suppression hearing Although the igniters have already voted Within the record There's contradictory testimony There's contradictory sworn testimony To the contrary Of course, of that But the state suggested there was no evidence That was presented on how it is That the door opened It's kind of a circumstantial evidence There is no structure H3.02 is what the circumstantial evidence is They want to suggest that Judge Kimmel Put in this quote, quote The agency title reasonable Inference Number one Number five Number two The definition of a search Is not What the state suggests that it is The state suggests Our crime is superb on the Fourth Amendment People were superb That there was a search Number one, that it was illegal Not much of a standard to put forth a crime of phishing In case the state acknowledges that In their brief Not much of a standard is required You've got to put forth evidence That there was a search, number one They broke the plan of the door They intruded into the house Period The definition of a search In this group, back and back and back Is that it is a governmental intrusion Into an actual And reasonable Expectation of privacy It doesn't matter what it is That they fought I can't remember, why were they there in the first place? I couldn't remember that This was not really clear either, Judge Because there were some questions that Mr. Clemmons Tried to get into during the preliminary hearing About what it was that they Had heard There was some tip that they had received That Stephen may be in possession of equipment Which was consistent with the manufacture Of marijuana There was some testimony About perhaps the existence Of a confidential source Never made it any further than that There's nothing in the record about that Number one, number two There was not an underlying warrant For this Some information they didn't have enough for a warrant Because they didn't have enough for a warrant They wanted to go They wanted to go to the agent So Mr. Keith, they're called agents Can you clarify that? Two of them weren't police officers I understand Were they drug agents or what? They were It's my understanding That at least two of them were Agents with the state police With the state police Southern Illinois Drug Task Force Who precisely That was comprised of I'm not sure And then they're with an officer A what? Someone from the Sheriff's Department Yes ma'am There were four different officers But three at one time Yes ma'am Three at one time And that's what we get into But they didn't have enough for a warrant And the agents have guns? Yes ma'am But they're plainclothed At least a couple of them are plainclothed But it was clear they were police officers At least one of the officers was in fact There in uniform The other thing about it What the record is clear about in this case as well Is that, and this is the whole record So you've got to look at the whole record Because there's no findings of fact that are entered There are no conclusions of law Which are entered There's one notice that the motion is suppressed Uncontradictory testimony Which is completely, completely the opposite Of what it is the judge can ultimately Find If there's no findings of fact The court of course has to assume That the judge will have credited the testimony That supports his conclusion But if the only testimony that he heard from Is the exact opposite of his conclusion That's manifest there And if it's manifest there that triggers A global review of the entire record And that's what we look at here And what happened with these officers Is that When they're hearing testimony They knock on the door And they didn't yell for help They knock on that door And then there's that wall of time The state receives The state receives at 15th of February And Stephen had no intention Of coming to that door Only came to that door when it was On one of the years that Cruz opened Number 2 And this is H&M was testifying During the preliminary hearing Number 2, he shouted in there For him to come forward Mr. Patney come out here We would like to talk to you Officers Knock on the door Shout in the house And when they're doing that After the door has been opened They continue to hold the storm door open They continue to hold it open You stand up I open the door accidentally I'm sorry about that Close the storm door Back up, he didn't do that He was shouting in the house And when he was shouting in the house He testified He was shouting in the house Holding that door open He could smell the odor Of marijuana And it's all under The clear demonstration of authority Clear acting under authority Here's the other thing About it Did he try to arrest him at that point Or did he say come out and we want to talk He said Mr. Patney come here We want to talk to you And then at that point He voluntarily came out of the house Did they have their guns drawn They didn't have their guns drawn They had a gun fragment But I would also suggest That these were not police officers Who were there and it was a private citizen See the key to an occupant Is that The police do no further than a private citizen There's an implied license To knock on the door There's an implied license to hope that somebody Would come and answer There's not an implied license to open the door Regardless There's certainly not an implied license To shout into the house and ask the occupant To come forward A private citizen carrying a gun Or otherwise a private citizen What it is that Agent Edwards did In this case But the record is clear that Agent Edwards did In this case he would have called the police He would have called the police And that's why I would respectfully dispute The characterization That he voluntarily came forward He even testifies He testifies in the suppression He can get But he couldn't see through the door The defendant He could see that the police had come forward Number one Did they have uniforms on? A couple did But they didn't accuse him Or say that you were under arrest They ordered him out of the house Asked him to come to the door And when he came out he opened the door The door was already open Why would he open it farther so he could get out? Well I don't know if he opened it further Or if it's Officer Edwards or Agent Edwards Who actually holds the door open Now I'm talking about the inner door Not the storm door Yes sir And that's the other thing about it Is that he doesn't want to come forward He doesn't come forward to the police Shouting to him and yelling to him But we would dispute that he came out Your Honor We dispute that he came out voluntarily But we would also suggest that it doesn't matter It doesn't matter Because as soon as that door opened The Fourth Amendment was violated As soon as that door Opened That line had been crossed It doesn't matter what information They acquired Kylo was Kylo's son Even if something is not intimate As a rug on the vestibule floor It doesn't matter If you see anything that you wouldn't be able to see Otherwise reasonably shielded Reasonable expectation of privacy You violated the Fourth Amendment Silver versus The United States Even a fraction of an inch is too much They wouldn't be on a fraction of an inch As soon as that door opened They certainly wouldn't be on a fraction of an inch And they continue to hold That door open and smell He improved, he opened two doors He improved, he changed his smell And he testified He was able to smell At that point, Fourth Amendment's violated And that's certainly a prima facie case Certainly a prima facie case The Fourth Amendment violation Received by Dr. Clark and everything else But it's a plain violation of the Fourth Amendment Just beyond prima facie  So everything that happens afterwards Doesn't matter At that point, the die is cast At that point, there's no turning back We're triggered That's the Fourth Amendment And that's what the evidence is here That's what the uncontradictory evidence was Here in this case It was beyond that Fourth Amendment Because of that, everything else that happened Should have been suppressed But beyond the Fourth Amendment We get to our Fifth Amendment issue Because you're asking about whether or not He was placed under arrest And you've come back and forth about whether or not Your Honor, he would have been free to leave At that point because they wanted to get him out on the porch Once he got out on the porch He can't go back inside Is it undisputed that he wasn't permitted To go back inside? I'll ask Mr. Daley as well It's undisputed that he was not permitted To go back inside That preliminary hearing testimony As well as also in the search warrant And what's really interesting about this Your Honor, this is where I talk about The issue of admissions a little bit The state wants to characterize this as a Frank's issue I don't think it is It's an issue of judicial admissions See, Agent Edwards, after he does this They get him outside They get him outside by five testifies Five, six, seven different times Including uncontroverted opinion 046 and 061  His lawyer happened to be his father His father is here But he requested a lawyer For both his Fifth Amendment By Fifth Amendment protections I cite three cases Young, Spivey, and Christomos All of which stand to the proposition You don't have to be in custody If interrogation is imminent And it looks like you're about to be the subject of something They got him out on the porch He can't go back inside Did he make any admissions on him? Yes sir, he did He did make admissions Admissions that remained after it was He requested a lawyer He talked after he asked for a lawyer Yes sir, he repeatedly asked for a lawyer The state suggested One, that that was ambiguous And I'll talk about that in a little bit Number two, that he said The lawyer would have to be my father My father would have to be a lawyer That's not what the testimony is That's not what the transcript is That's why I cited you those two cases But yes, he did Was that an answer of a question Or did he just blurt it out? Multiple times he said He was asking about what it was, what this is about And things like that But he specifically said He said I want to call my lawyer Let us inside No, I want to talk to my lawyer And I want to call He asked to talk with the lawyer He couldn't go back inside But he didn't say anything that was incriminating at that point? After he did Yes sir After they went inside Okay, they didn't go inside They went inside after they got a warrant And the warrant that they got Is supported by an affidavit That H.E. Edwards swore out H.E. Edwards says that Stephen Green What I'm trying to get at When he You claim a Fifth Amendment violation Yes sir What did he do after that That should be suppressed Well, he ultimately Was placed under arrest And ultimately They got a warrant And Did he say He committed himself after He was arrested Yes sir, he did Thank you very much Good morning Your Honor Excuse me, please How are you How are you Someone unorthodox I suppose To do this The state's position coming into this argument Was that the evidence presented At the suppression hearing simply did not establish An illegal search It established perhaps the foundations Of what could be considered a search If there was evidence to show that which was acquired As a result of the illegality That will be suppressed At this point we don't know what's to be suppressed Based upon the evidence presented at the suppression hearing However In preparing for this argument last night I had kind of a niggling feeling That I was missing something So as a way of a concession I had The thought that I think that the appellate court's Parameters of review Are somewhat different than perhaps the circuit court's Reception of evidence as far as a Fourth Amendment argument is concerned My Suspicions were correct this morning I did find some authority from this Court actually which stated that the Review of a suppression Is Essentially been brought Into the entire record and that's Now contextually determined not whether Or not the court's order should be Affirmed or not but the context Of this particular authority is that there was Testimony not presented which One of the sides attempted to assert While this court never heard this at the suppression Hearing and therefore So it's my intention to Supplement This brief with that Authority and I doubt there will be any objections Since it's probably more in the defendant's Favor than anything else but I won't discuss it At this juncture Only to acknowledge as much that I guess I would have to agree to some extent That it may be arguable for this Court to look at Testimony that was presented At the time of the preliminary hearing Or the search warrant itself Which is also part of the record That being the case I think it needs to be emphasized At the outset because it really hasn't been done so Particularly clearly The procedural posture of this case at this juncture Is that the court had found That the defendant had not made A prime facious showing Of A Fourth Amendment violation So Mr. Daly Are you asking leave now To supplement I will after court I will provide copy to Council and I will Follow the appropriate motion of the court I won't offer any argument on top of that Apart from what I just told you It's fairly self-evident about the scope of the Appellate Court's review and how that's maybe different  When it considers evidence of the suppression So that being the case I think that sort of Leaves the door wide open for You know obviously the state Would still submit and ask for Affirmance but given the procedural Posture The other alternative would be remand To the circuit court for the Completion of the suppression hearing if you will Since the law is that If the defendant meets the prime facious showing Then It reverts to the state To present evidence although the ultimate burden Of persuasion risks with the defendant Throughout the proceeding Now The evidence that was presented Was correct It was just Mr. Kopecki He's the only one to testify Defendant argues that the officers Are there to testify I didn't see that stipulation That he mentions but I don't doubt that's probably true I'm sure the state had their witnesses There as well Um And they could have been called by the defendant But they were not So what we have is that Mr. Kopecki had saw These agents pull up to the house Evidently he must have Recognized them somehow whether by Is there any evidence that he was Looking out the window He had seen them pull up to the house He testified that Upon seeing that He then retreated to the bedroom When they started to knock on the door He had no intention at that point Of answering the door There's nothing wrong with that I'm not suggesting there is I'm just saying that His recognition of who these individuals were Was manifested from the outset Of his visualization Of when they pulled up to the residence Um They heard knocking at the door And then he did hear A pause if you will That I suppose the defendant characterized As creaking the door He testified That he was at that point sort of concerned About what was going on Whether someone was traipsing through his house Illegitimate concern I suppose And so he goes to the front area Where the front door was And at that point he sees that the front door The main door if you will Was open about a foot or two The officers were standing outside the porch They had not entered the residence They were holding open I believe it was a storm door I think the fair information The main door was open The main door had come open whether it was pushed open Or accidentally That's something I'll get to in a minute When we talk about other evidence Now So Now the defendant says well They were shouting at him to come outside I don't think that's necessarily What happened here The defendant does point out In the preliminary hearing testimony And I don't want to mishash all these things together Because it gets a bit confusing And right now I want to stick to the suppression hearing testimony But there was I believe testimony That they had shouted to him to come Out But when they came There was no evidence I believe  Or compelled him As the defendant was attempting to argue here To exit the residence They asked him to come outside and he did so The defendant testified Did he testify they identified themselves And asked him to come out? I believe so yes And he did not testify that he felt he was under any compulsion At that time So By all appearances It appears that they were there They wanted to talk to me At the exit of the residence voluntarily He came outside Closed the door behind him And then they had a discussion On the officers that asked him Whether he would be Willing to Agree to a consent to search He did testify That you know If he didn't agree That things could go badly for him They might have to go get a search warrant Etc etc Yes At some point He asked to go back in And use his cell phone His personal cell phone Now do you agree that he was denied That I disagree Oh you do Initially they said no However after Some cross talk They agreed for him to go inside his residence And use a cell phone to call his father But he had to be accompanied by an officer When they initially say no Is it your position he was in custody at that point When they say no I would say he was not in custody Okay now I've had a lot of trouble With that concept Being congruent With them denying him access So you're saying that he could He was free to leave But he could not go back into his house It's supplemented in this case With authority Because there's ample authority I believe Which states that it's permissible for officers Who have targeted residents For a search To deny within the scope of Permissible Fourth Amendment To deny a defendant to re-enter the residence And that's just a matter of preservation of evidence But then you're also admitting basically That his residence was targeted His residence, well obviously it was They didn't show up there as a random Knock and talk So we're not community care taking Or a random knock and talk You're not going there So they had some kind of tip off There was a reason why they were there And it was because they suspected criminal activity Well sometimes they claim they do Well then they're lying But that's just my personal Experience I can tell you that I do however Disagree that he's in custody Now he admitted That he was told and he understood That he was free to leave at the time He couldn't go back into his house But apart from that his freedom of movement Was not constrained in any way He could have walked down the block He could have gone to a neighbor's house And used his phone there to call dad He could have gone to McDonald's to get lunch He could have done anything he wanted to They didn't care They never told him that he had to stay on that porch And he could not leave until they were done He was never told that So let's be very careful when we talk about custody The fact that he wouldn't let him in his house Did not restrict his movement as a free individual Except to the extent that the officers Who were acting within the legitimate scope Of their Fourth Amendment duties Don't allow him unaccompanied back into the house When they suspect that there's Illegal narcotics or something illegal And that's just Common sense But that's not custody So I would challenge that notion And I don't And I think that The evidence would reflect that he was free To move about if he chose to do so And the officers did give them Different options for him to make a phone call He could have gone in and used his cell phone And the officer said Here, here's my cell phone, this is right at the outset Go ahead and make a phone call And he said, I don't trust it, it's bugged He could have outlined what his testimony was So You know The notion that these were overbearing officers That weren't giving him alternative means In which to undertake a phone call Was his father's simple fault Nevertheless, what we have at this point Is he's outside the residence And he's not going to give consent to search And so Ultimately at some point In that week The defense testimony Fairly considerable amount of time That the officer eventually left And went to obtain the search warrant And then came back and searched the residence After the search was done After they found the drugs He was then placed under arrest And at that point I don't recall any incriminating statements Was there a motion to quash the warrant for some reason? I don't know I can't recall I don't recall This sort of touches a little bit on Frank's notion here That I'll get to as well But I don't My notes don't reflect that In fact, there's really no challenge To the warrant itself at all In the actual motion That counsel filed It was different counsel than the appellate counsel The only challenge to the warrant Was that it was vague and inconclusive That was the single challenge To the content of the warrant itself So what we have At this point is essentially The police show up, they knock on the door The defendant comes outside They talk, the police leave, they get the search warrant We don't know How the door opened or what they saw Or what they smelled or what they heard We don't know if they saw anything We don't know if they smelled anything or not Based upon the evidence of discretion So what the defendant has established Evidentially is that There was an open door and something went in But we don't know what And I would argue that If you're going to show that there's an illegal search You have to show that there was a search Meaning that you've actually acquired some information Through illegal means Because there's nothing illegal About standing outside the porch On the defendant's porch I have a little problem How did the door At the suppression hearing Was there evidence as to There was a closed door that later became open? Yes, correct The defendant testified the door was To his recollection was securely closed And he alleged then that the officers opened the door The officers, something happened Either they intentionally or accidentally That's sort of the dispute That comes into play when we talk about The preliminary hearing testimony And all that The search warrant was not Introduced in the court report Even made note of the fact that they didn't have a search warrant Or the complaint of a search warrant Before the court So there really wasn't much for the court to suppress Because there was nothing suppressible The only search that ever took place Is one that occurred after a search warrant had been obtained Having said that, however Again, I go back to what I mentioned At the beginning of the argument If you look at The rest of the evidence In the case, it's clear that The search warrant affidavit Was motivated by an Imminent odor of Cannabis Defendant votes I think probably fairly enough There's some Maybe lack of clarity perhaps About exactly the circumstances of that The affidavit in support of the search warrant Said that the When the defendant Exited the residence and the decision The door opened, I can see what the term is Sort of a loft of odor came out And that's sort of how they detected that And that's where the question took place Preliminary hearing testimony Made it sound more like they opened the door And that's when the smell came out Where were the plants found? I don't recall They were They weren't right there in the living room They were a little further in So So Obviously I think that if you look It's simply what was presented by the defendant In furtherance of their burden There was not enough If the court chooses however To draw upon evidence that exists Outside of the hearing Then I would at least concede That it raises a question That may prompt the court to want to Demand this further evidence Because Obviously something Happened which prompted the police To go make a search warrant in the first place So as an officer of the court I have to admit That that is one I think legitimate option For this court given the case law Which I'll supply It's a fairly established case law With regards to the appellate court's powers of review On suppression motions And what's sort of the twist of this Is we haven't really gotten to the end Of the motion here per se It's almost like a summary judgment That the defendant failed to establish The requisite facts in which to prove At least prima facie showing Of an illegal search So I do want to get that particular notion Before the court With regards to the fifth amendment however It is not In case law It's clear that asking for consent To search is not Neither incriminating or even An interrogation The defendant was asked a number of times To give consent And he refused Now I did mention his father I won't call my father, he's a lawyer I won't call my father, he's an attorney If the question is such that Is that particular Q&A Or statement by the defendant Something that sort of factually carries over Into the subsequent post Miranda Interrogation The defendant was Arrested when they found the drugs In the residence I think it's important to note that The invocation of the right to counsel Is both specific and has to be Unambiguous Well to say it's unambiguous I think is a bit of a stretch Because they're giving them Usually you know you don't have A right just to call your friends But Just I mean obviously I think in their mind they Connected it I would think They're offering them his cell phone I don't see how they But obviously how did that right to counsel Look If you want to attribute constitutional significance To the defendant's request for counsel While they're asking him For the search There is none because While he certainly has a right If you will to talk to his father It's a right attenuated from The legality or illegality of asking him For consent or whether they obtain it or don't Number two The Parameters of that request don't relate To the request to obtain Incriminating information So there's no reasonable officer I think That under those circumstances where he's asking To call his dad Who happens to be a lawyer And that's another aspect of the ambiguities He's asking for his dad Who happens to be a lawyer Nonetheless The parameters of that relate to whether or not He should give consent To search his residence or not Because that's what's going on at that point He wasn't being questioned about what was inside His residence per se He wasn't being asked about a grow operation Or do you Or to give anything incriminating beyond a yes or no Answer which is not incriminating We know it's not incriminating anything To request for consent to search So I think to Take that Particular set of facts And then carry that forward into the post-Miranda Q&A where the defendant Was advising his rights And then agreed to speak with the police I think is a real stretch You're saying that after When the Q&A started Post-Miranda he no longer Asked to speak with his Father who happened to be a lawyer He didn't He couldn't recall He was advising of the right to counsel But he did not ask to speak To his father And that obviously would change The complexion of the Fifth Amendment argument Had that been the case But that's not what happened After he was arrested He gave a statement I believe twice Miranda So I want to emphasize that I don't think that there's any Constitutional significance to his Wanting to talk to his dad who happens to be a lawyer When they're asking him For consent That's seeking advice But it's not something which The officer's Granting or denial of Which has any significance In this case But I do point out that they did afford him I think fairly Lenient and reasonable Accommodation in that regard Which he refused to take part of Until basically it's too late And the officers already made the decision To obtain a search warrant So really I think this boils down to a Fourth Amendment issue I don't think the Fifth Amendment issue The knock and talk argument the defendant raises I think is essentially Sort of Attached if you will To the general Fourth Amendment question About the legality of the Officer's actions I can see that pushing open a door Would exceed the scope Of an ordinary knock and talk But exceeding the scope still has to result In some principle of illegality Of which you're going to seek suppression It's not enough to say That what the officers did was naughty But you have to say what the officers did was naughty And resulted in X Because that's what a suppression hearing is They're asking the court to suppress something So You know If you don't have a fruit of an illegal search I'm not sure how you'd have a search Subject to a suppression And that's A philosophical question If it was naughty And they had no right To have the door open Then they would have never smelled the Marijuana We don't know what or anything Based on the suppression hearing testimony That's my point If you look strictly at the suppression hearing testimony You have no clue What they did or did not detect Because nobody bothered to bring it up And whose responsibility is that Not the state But again I will supply this court with that authority And I think that that If this court ultimately decides that a remand is appropriate I think that they're making some grounds to do so On the solicitation To concede that point Now I put so much work into my first argument I appreciate your time Counsel, I have a question What are you trying to suppress In the argument about Request for counsel Pardon me My father's an attorney And you're trying to suppress Based on that what? Everything that came afterwards All the statements that were made Afterwards In other words it's a fifth amendment argument Yes sir And it is It's a fifth amendment argument And it's voluntary Now when David talks about the fact that Well I don't see how there is a right At counsel hearing He tries to draw a line there Between the fact that they're trying to seek consent And otherwise Those are the three cases that I talk about That's Young, that's Filey And that's Briscoe's case Now if they have some Contrary authority And it's certainly been suggested that there is other authority out there On other issues In this case Then these three cases, that's fine But quoting from these cases Your honor, this is people versus Young This appears on page 34 of my brief 201, 113, 521 525 is a specific Site In individual's Fifth amendment rights exist exclusive Of the right to receive Miranda warnings Therefore we do not view Custodial interrogation as an Indispensable requisite for the Invocation of those rights Filey I cite on the next page Stands for the same proposition Quote, the right to have counsel present During interrogation is so important And fundamental that the invocation of such A right should not depend on whether or not An arrest is taking place And then we go to Christos Rost And what Christos Rost talks about Is this Actually this is Filey Even though the defendant was not under arrest at this time Nor in custodial interrogation Within the technical meaning of the term He nevertheless invoked his fifth amendment Constitutional rights to remain silent And to counsel Go on to Christos Rost He talks about the same thing, this was a guy who was in the hospital Not in custody The police knew though, he had heard Somebody tell him, the police have heard Somebody tell this man, local people Tell him, go talk to the police, get a lawyer Get a lawyer, get a lawyer It didn't matter, it didn't matter in that case They took him into custody, they got a statement What does the court say I'm not really trying to suppress a statement I'm wondering, if you draw the line From the time he came out of the house What was wrong with what happened before that time Is that what you're trying to suppress When he came out of the house and asked for a lawyer Or said, my father's a lawyer Everything Everything that happened after That's what you're trying to suppress And that's the statement your honor, that's correct But it has nothing to do with the search warrant It does, and it doesn't But You're still part and parcel of it You look at what the stipulation was, what the evidence was They certainly relied in part upon Statements that he made afterwards There were certainly those statements So he said something that gave him Reason to get a search warrant According to The affidavit He did, and according to them They say that once they got him Outside, they want to search, they want to search He says he's not going to let them in there That's not grounds for a search warrant I'm not letting someone Say don't go in my house They suggest though That he said, we asked him If he was growing 500 plants And he says no, we asked him If he was growing 20 plants And he says, I'm not saying That's part of what the basis was So if you don't say anything You're suppressing not saying anything They could have used silences, submissions That's everything That happens afterwards True, those statements And that was in the application for a search warrant It was, but the application for a search warrant Is contradicted by the preliminary hearing Testimony Edwards did one of two things, either lied in the search warrant Or he lied in the preliminary hearing He did one of the two Preliminary hearing, he says, this is back to the Fourth Amendment And everything we were trying to suppress By the way, the question was asked By your honor about whether or not The warrant was challenged The state suggested it wasn't, it was It was, that's tab 3 of the appendix I've got the warrant Here Your honor, at paragraph 16, this appears in appendix Page 37, paragraph 16 The complaint for the search warrant is defective And that it lacks probable cause Suspending conclusory and so on Another attack in paragraph 17 The warrant, the question, not free from obvious Defects As a result of Stevens arrest Initial illegality Without a probable cause And then the warrant is attacked In paragraph release Of paragraph A The warrant was absolutely attacked In this case, there was that question And I wanted to answer that And to clear that up As well, but He never comes to the door If the police don't open That door first And we have that evidence He doesn't come to the door if Not only they open the door First, not only is there that 32nd wall But he does yell in there That's the other thing, the state says I don't know if he really yelled in there Page T-005 and T-001 No, he testified that he wouldn't come to the door He testified that he was not going to Come to the door, the state concedes He was not going to come to the door But the police were yelling in there for him And the police had opened the door The only reason he came to the door Is the police forced him to come to the door Because they opened it Could he just shut the door With the police on the porch Could he have in theory In Kentucky v. King Shut the door on the police I guess in theory He could have, except that The police already had that door Open on him The police were shouting and calling Him forward And yes, it's not Voluntary at that point It's not voluntary He's yelled in there T-005 T-0016 That's Agent Evans' sworn testimony Two different times he says that he yelled He yelled in there for him to Come out Now just ask him to yell and he has to come out Yes sir And he goes to the door and goes out Rather than close the door and shut it Ultimately yes Thank you In case you were taken under Advisory and you were Receiving an order in due course We are in recess now Until tomorrow morning at 9 o'clock Thank you guys